The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of A.B.-B., a Child, Juvenile–Appellant.

No. 07CA1292.

Colorado Court of Appeals, Div. III.

Jan. 22, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee.

Jami L. Vigil & Associates, Jami L. Vigil, Westminster, Colorado, for Respondent–Appellant.

Opinion by Judge CASEBOLT.

A.B.-B., a juvenile, appeals the judgment adjudicating him delinquent based on a finding that he committed acts that, if committed by an adult, would constitute one count of sexual assault on a child under section 18–3–405(1), C.R.S.2008, and one count of sexual assault on a child as part of a pattern of sexual abuse under section 18–3–405(2)(d), C.R.S.2008. We affirm.

The victim, A.B.-B.'s cousin, reported that A.B.-B. caused him to engage in oral sex on multiple occasions over a five-week period when their families were living together. A.B.-B. was thirteen and the victim was five years old at the time of the offenses. The People filed a two-count petition in delinquency after the victim's mother contacted police.

At the preliminary hearing, a magistrate granted A.B.-B.'s oral request for a jury trial because, at that time, the People were planning to file aggravated juvenile offender charges against him, entitling him to a jury trial under section 19–2–107(1), C.R.S.2008. The People later decided not to do so, however, and opposed A.B.B.'s request for a jury trial.

The juvenile court determined that A.B.-B. was not entitled by statute to a jury trial, and it also chose not to exercise its discretion to grant him one. The court then set the case for a bench trial. Following trial, the court found that the People had proved the two counts beyond a reasonable doubt and adjudicated A.B.-B. delinquent. This appeal ensued.

## I. Jury Trial

A.B.-B. contends that the juvenile court erroneously denied his request for a jury trial. We disagree.

### A. Statutory Entitlement to Jury Trial

Because A.B.-B.'s argument raises questions of law, we review the juvenile court's ruling de novo. *People v. Melillo,* 25 P.3d 769, 777 (Colo.2001); *People v. French,* 165 P.3d 836, 839 (Colo.App.2007).

The goals of the juvenile justice system are fundamentally different from those of its criminal counterpart. "[T]he underlying theme of a delinquency proceeding is to provide guidance and rehabilitation for the child and protection for society rather than fixing criminal responsibility, guilt, and punishment." *People in Interest of T.M.,* 742 P.2d 905, 907 (Colo.1987). Courts are to execute delinquency proceedings with these aspirations in mind, for "the clear legislative intent is that the handling of juvenile delinquents should be oriented towards rehabilitation and reformation, and not punishment as such, even though the actions of the child if committed by an adult would justify a criminal proceeding." *People ex rel. Terrell v. Dist. Court,* 164 Colo. 437, 445, 435 P.2d 763, 766 (1967).

The different goals of these systems are manifested in both the consequences imposed upon and the protections afforded to juvenile offenders. Although the federal constitution guarantees a jury trial to adults accused of serious criminal offenses, courts have not interpreted this guarantee to extend to juveniles in delinquency proceedings. *See, e.g., McKeiver v. Pennsylvania,* 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Courts have recognized the possibility that mandating jury trials in juvenile proceedings as a constitutional matter "will remake the juvenile proceeding into a fully adversary process and will put an effective end to what has been the idealistic prospect of an intimate, informal, protective proceeding." *A.C. v. People,* 16 P.3d 240, 243–44 (Colo.2001) (quoting *McKeiver,* 403 U.S. at 545, 91 S.Ct. 1976).

Section 19–2–107(1), however, provides juveniles the right to a jury trial in certain circumstances and allows courts—in their discretion—to empanel a jury in delinquency proceedings involving felony offenses. The relevant portion of the statute states:

> In any action in delinquency in which a juvenile is alleged to be an aggravated juvenile offender, as described in section 19–2–516, or is alleged to have committed an act that would constitute a crime of violence, as defined in section 18–1.3–406, C.R.S., if committed by an adult, the juve-

nile or the district attorney may demand a trial by a jury of not more than six persons ... or the court, on its own motion, may order such a jury to try any case brought under this title....

§ 19–2–107(1). We must therefore determine whether the People alleged that A.B.-B. committed an act that would constitute a crime of violence as defined in section 18–1.3–406, C.R.S.2008.

Section 18–1.3–406 defines two types of "crimes of violence." First, section 18–1.3–406(2)(a), C.R.S.2008, delineates ten different offenses that are crimes of violence if they were committed by a person who used, possessed, or threatened the use of a deadly weapon or they were committed in a way that caused serious bodily injury or death. That provision is not involved here.

Second, section 18–1.3–406(2)(b)(I), C.R.S. 2008, specifies that a crime of violence is also "any unlawful sexual offense in which the defendant caused bodily injury to the victim or in which the defendant used threat, intimidation, or force against the victim." This is the operative provision at issue in this case.

Here, while the People charged that A.B.-B. committed an unlawful sexual offense, he was not charged with causing bodily injury to the victim, and he was not charged with using threats, intimidation, or force. Accordingly, under the plain language of the statute, he was not entitled to a jury trial on the charge.

A.B.-B. nevertheless contends that he is entitled to a jury trial because a conviction for sexual assault on a child as part of a pattern of abuse is a per se crime of violence that requires violent crime sentencing under section 18–1.3–406. See § 18–3–405(3), C.R.S. 2008 (a person convicted of sexual assault as part of a pattern must be sentenced in accordance with § 18–1.3–406). We conclude that, even though a conviction of this crime does require violent crime sentencing, that does not make it a violent crime "as defined in" section 18–1.3–406.

■ The General Assembly has identified specific crimes that do not fall within the mandatory sentencing statute's crime of violence definition, yet are subject to that stat-ute's sentencing requirements. In 1986, the legislature amended the sexual assault on a child statute to ensure that especially heinous forms of the offense would be punished in accordance with the mandatory sentencing statute. See Ch. 138, sec. 7, § 18–3–405, 1986 Colo. Sess. Laws 777. Three years later, the legislature added sexual assault on a child as part of a pattern of sexual abuse to the list of crimes for which enhanced sentencing was required. Ch. 163, secs. 2–3, § 18–3–405, 1989 Colo. Sess. Laws 903–04. Crimes such as these, which are not specifically "defined by" the mandatory sentencing statute but require sentencing in accordance with it by the statute defining the substantive offense, are termed *"per se* crimes of violence." *People v. Banks,* 9 P.3d 1125, 1130 (Colo.2000) (emphasis in original).

■ Statutes applicable to crimes of violence as defined in the mandatory sentencing statute are not necessarily applicable to per se crimes of violence. *Id.* at 1131. In *Banks,* the court determined that an extraordinary risk sentencing provision applicable to crimes of violence "as defined in" the mandatory sentencing statute was not applicable to a per se crime of violence—second degree assault on a peace officer. *Id.* at 1130–31. The court reasoned that the legislature "has been selective in determining when the presumptive sentencing range of the crime of violence statute is increased by the extraordinary risk statute." *Id.* at 1131. The legislature intentionally selected only those crimes defined in the mandatory sentencing statute, and not per se crimes of violence. *See id.*

We find the court's reasoning in *Banks* persuasive here. The General Assembly has also been selective in determining when juveniles are entitled to a jury trial in delinquency proceedings. Before 1983, a juvenile could demand a jury trial in most delinquency adjudications. *See* Ch. 443, sec. 1, § 22–1–6, 1967 Colo. Sess. Laws 999 (recodified as § 19–1–106 in 1973). In 1983, the legislature removed the jury trial option for delinquent acts that would be a class two or three misdemeanor, petty offense, or municipal or county ordinance violation if committed by an adult. Ch. 209, sec. 2, § 19–1–106, 1983 Colo. Sess. Laws 721. It further curtailed

jury trials in delinquency proceedings in 1996, when it put their availability at the discretion of the court in all cases other than those in which a juvenile is alleged to be an aggravated offender, or is alleged to have committed what for an adult would constitute a crime of violence "as defined in" the mandatory sentencing statute. Ch. 283, sec. 1, § 19–2–107, 1996 Colo. Sess. Laws 1598.

The Children's Code's current jury trial provisions are therefore clear: unless charged as an aggravated offender, a juvenile is entitled to a jury trial in a delinquency proceeding only if charged with what for an adult would be a crime of violence "as defined in section 18–1.3–406." § 19–2–107.

When the General Assembly amended the jury trial provisions of the Children's Code in 1996, the difference between crimes of violence defined by the mandatory sentencing statute and per se crimes of violence had already been established. *See* Ch. 138, secs. 1–9, 1986 Colo. Sess. Laws 776–78; *People v. Terry*, 791 P.2d 374, 377–79 (Colo.1990). We presume the legislature was aware of applicable precedent when it changed the law. *Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo.1997). The legislature could have extended the protection of a jury trial to juveniles accused of committing what would be per se crimes of violence for adults. The Children's Code's specific reference to the crimes "defined in" the mandatory sentencing statute, however, indicates that it chose not to do so.

■ We are required to enforce the legislature's choice of statutory wording if the result is not absurd. *Banks*, 9 P.3d at 1131. The result in this case is not absurd. Juveniles found to have committed offenses defined by the mandatory sentencing statute— all of which involve deadly weapons, bodily injuries, or especially heinous sex offenses— are subject to greater consequences than those who have committed what for an adult would be per se crimes of violence. *See* § 19–2–516(3), C.R.S.2008 (defining a violent juvenile offender as one found to have committed an act that constitutes a crime of violence "as defined in section 18–1.3–406(2)"); § 19–2–908(1)(c), C.R.S.2008 (upon adjudication as a violent juvenile offender, the juvenile will be placed out of the home for not less than one year); *see also* § 18–1.3–406(2). Accordingly, juveniles charged with such crimes are afforded the added protection of a jury trial. *See* § 19–2–107. Juveniles charged with committing what would be per se crimes of violence for adults are not exposed to the same criminal liabilities or afforded the same protections.

Here, although sexual assault on a child as part of a pattern of abuse is a per se crime of violence, it is not a crime of violence as defined in section 18–1.3–406(2) unless the juvenile is charged with causing bodily injury to the victim or the assault involved the use of threats, intimidation, or force. The non-pattern sex assault charge is not a per se crime of violence and also does not fall within the definition in the mandatory sentencing statute. Thus, A.B.-B. was not charged with a crime of violence "as defined in section 18–1.3–406," and therefore was not entitled by statute to a jury trial.

### B. Discretionary Grant of Jury Trial

■ A.B.-B. asserts that, even if he was not statutorily entitled to a jury trial, due to the circumstances of his case, the juvenile court should have exercised its discretion to grant him one. We find no reason to overturn the court's exercise of its discretion.

■ We review a trial court's ruling on a juvenile's request for a jury trial in a delinquency proceeding for abuse of discretion. *See A.C.*, 16 P.3d at 243. "Discretionary decisions will not be disturbed unless the court's action was manifestly arbitrary, unreasonable, or unfair." *People v. Riggs*, 87 P.3d 109, 114 (Colo.2004).

Here, the case against A.B.-B. was based entirely upon the recollection and testimony of a victim who was five years old at the time of the alleged abuse. The People asserted the victim would be further traumatized if required to testify before a jury. A.B.-B. offered no evidence or argument to the contrary.

It is true that, following trial, A.B.-B. was required to register as a sex offender and he may suffer social stigma because of this adjudication. But the circumstances of A.B.-B.'s

case are little different from those associated with many prosecutions for abuses of young children. We perceive nothing about this case that renders the decision to deny a jury trial manifestly arbitrary, unreasonable, or unfair.

 A.B.-B. also argues that the shorter speedy trial period associated with bench trials was sufficient reason for the juvenile court to grant a jury trial. *See* § 19–2–107(4), C.R.S.2008 (six-month speedy trial limitation for jury trials); § 19–2–708(1), C.R.S.2008 (sixty-day limitation for bench trials in delinquency proceedings). However, he has not shown how he was prejudiced by reduced trial preparation time. Indeed, A.B.-B. had notice for over two months before the adjudication that the People opposed his request for a jury trial. He also had over five weeks to prepare once the final decision was made to conduct a trial to the court. Equally important, this was not a factually complex case and a limited number of witnesses were called to testify. As before, we perceive no reason to overturn the juvenile court's exercise of its discretion.

## II. Notice of Charges

 A.B.-B. contends that he received inadequate notice of the charges against him. Specifically, he argues that a predicate offense to the pattern of abuse charge "must be alleged and proven with specificity separate from the incidents comprising the pattern of abuse." We perceive no error.

 A delinquency petition is closely analogous to an information in an adult criminal case. *See People in Interest of M.M.,* 43 Colo.App. 65, 67, 599 P.2d 968, 970 (1979). If an information contains the essential elements of the crime charged, it will be deemed sufficient. *Melillo,* 25 P.3d at 778. "This requirement is satisfied if the language in the charge tracks the statutory language." *Id.* A charge need allege only enough facts to allow the accused to prepare an adequate defense. *See id.*

Here, the delinquency petition contained two charges against A.B.-B.:

> That between and including February 1, 2005 and March 15, 2005, at the City and County of Denver, State of Colorado, [A.B.-B.] unlawfully, feloniously, and knowingly subjected [victim], not his spouse, to sexual contact and the victim was less than fifteen years of age and the defendant was at least four years older than the victim. Further, the defendant committed the act as a part of a pattern of sexual abuse; in violation of section 18–3–405(1), (2)(d), C.R.S.

> That between and including February 1, 2005 and March 15, 2005, at the City and County of Denver, State of Colorado, [A.B.-B.] unlawfully, feloniously, and knowingly subjected [victim], not his spouse, to sexual contact and the victim was less than fifteen years of age and the defendant was at least four years older than the victim; in violation of section 18–3–405(1), C.R.S.

Both charges closely parallel the language of their respective statutes, and both contain the essential elements of the crimes charged. The People provided the factual basis of the charges to A.B.-B. by providing a copy of a forensic interview of the victim three months before trial.

We thus conclude that A.B.-B. had adequate notice of the charges against him. *See Melillo,* 25 P.3d at 779. Accordingly, we reject his contention.

The judgment is affirmed.

Judge LOEB and Judge ROMÁN concur.