Argued and submitted July 30, reversed and remanded for new trial
November 13, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# THOMAS RAY IVERSON,
*Appellant.*

C000162CR, C000523CR; A113852 (Control), A113853
(Cases Consolidated)

57 P3d 953

Lawrence Matasar argued the cause and filed the brief for appellant.

Kaye E. McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals his convictions of nine counts of sexual abuse in the first degree, ORS 163.427, raising a number of assignments of error. We hold that the trial court erred in admitting the hearsay statements of several child witnesses after the state failed to comply with the requirements of OEC 803(18a)(b), and we therefore reverse.

Defendant was a primary school music teacher. He was charged in one indictment with 12 counts of sexual abuse in the first degree and in a second indictment with two additional counts; all of the counts were based on his alleged improper touching of several female students. The indictments were consolidated for trial.[1] After some postponements, the trial was scheduled to begin on December 12, 2000. On November 30, 2000, 12 days before the scheduled beginning of the trial, the prosecutor notified defendant that, relying on OEC 803(18a)(b), he intended to offer evidence of hearsay statements by child witnesses at the trial.[2] Defendant objected to the proposed evidence on the ground that the state had failed to provide the notice 15 days before the beginning of the trial, as the rule requires in the absence of a showing of good cause. At a pretrial hearing, the trial court overruled the objection on the ground that a trial does not begin until the jury has been selected;[3] that was not a ground that the state had raised.

The scheduled trial date was December 12, and proceedings for the trial began on that day. From December 12 through the first part of December 14, the court considered several preliminary matters directly related to the conduct of the trial. Jury selection began on December 14, and the jury was sworn on December 19. The challenged evidence was admitted during the course of the trial. At the end of the trial

---

[1] Defendant was also charged in a third indictment with one count involving a male student; he was acquitted of that charge.

[2] Defendant argues that the notice did not provide the particulars of the statements, as the rule requires. However, the affidavit that accompanied the notice adequately identified the statements that the state intended to offer, all of which it had previously provided to defendant during the course of discovery.

[3] The judge who ruled on the objection was not the trial judge.

the court granted defendant's motion for a judgment of acquittal on three of the counts in the first indictment; the jury acquitted defendant of two other counts in that indictment and convicted him of the remaining counts in both indictments. The hearsay evidence from the child witnesses was relevant to the counts on which defendant was convicted.

OEC 803(18a)(b) provides for the admission of hearsay statements by a person concerning an act of child abuse if the declarant either testifies at the trial and is subject to cross-examination or is chronologically or mentally younger than 12 years old and is unavailable to testify. In either case,

> "[n]o statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown."

On appeal, defendant argues that the notice was untimely and that the state conceded below that it did not demonstrate good cause for the late notice. Thus, it follows that the court should have excluded the evidence. The state responds that the trial court correctly ruled that the trial began for the purposes of the rule when the jury was sworn, that the ruling did not prejudice defendant, and that, on the record before it, the court should have found that the state had good cause for the late notice.

■ We begin with the issue that the trial court found decisive, which is when a trial begins for the purpose of the notice that OEC 803(18a)(b) requires. The rule simply requires the proponent of the evidence to give notice "no later than 15 days before trial"; it does not indicate when the trial begins. When the legislature used the word "trial" in ORS 803(18a)(b), we presume that it intended the ordinary meaning of the word. *Webster's Third New Int'l Dictionary* 2439 (unabridged ed 1993) defines "trial" as:

> "the formal examination of the matter in issue in a cause before a competent tribunal for the purpose of determining such issue : the mode of determining a question of fact in a court of law: as **a** : such an examination of an issue of law when it is before a judge alone or of fact when it is usu. before a judge and jury **b** : all proceedings from the time

when the parties are called to try their cases in court or from the time when issue is joined to the time of its final determination **c** : such proceedings subsequent to swearing in a jury[.]"

Under that definition, either defendant or the state could be correct. Definition "**b**" defines "trial" to include all proceedings from the time that the parties are called to try the case— that is, from the date that, under the court's schedule, the trial is to begin. Definition "**c**" limits the meaning of the word to proceedings that occur after the swearing in of the jury.

Other statutes and rules that relate to the beginning of a criminal trial appear to refer to the date on which the trial proceedings commence, not when the jury is sworn. For instance, ORS 136.290 requires the release of a defendant in custody if the "trial" does not commence within 60 days after the defendant's arrest. ORS 135.763 requires the district attorney to bring a defendant in the custody of the Department of Corrections or a county authority "to trial" within 90 days after receipt of a notice requesting a trial. Those statutes necessarily assume that the trial commences on the date scheduled, not on some unknown later date when the jury is finally sworn. Any other meaning could lead to the release of an incarcerated defendant, ORS 136.290(2), or the dismissal of the charges, ORS 135.765, simply because jury selection took longer than anticipated.

Also, OEC 412(4)(a) requires that an accused move to permit evidence of the victim's prior sexual behavior "not later than 15 days before the date on which the trial in which the evidence is offered is scheduled to begin[.]" OEC 412, thus, expressly measures the required motion by the date trial begins, not the date on which the jury is sworn or some other later time. Similarly, the Supreme Court has referred to the rule as requiring the accused to make the motion by "the fifteenth day *before trial*," *State v. Lajoie*, 316 Or 63, 71, 849 P2d 479 (1993) (emphasis added), thus using the precise phrase that the legislature used in OEC 803(18a)(b). That usage suggests that the two rules have the same meaning, which is that the motion or notice must come 15 days before the scheduled trial date.

The Uniform Trial Court Rules (UTCR) point to the same conclusion. UTCR 4.010, which requires that motions for rulings on pretrial matters be filed in writing not less than 21 days before trial, and UTCR 7.010, which governs the setting of trial dates, necessarily require that the trial date be the date on which proceedings begin, not an imprecise future date on which the jury is sworn. The clerk's record in this case, which shows the events of each date from December 12, 2000, through January 3, 2001, as "**Trial Jury Scheduled**," also reflects that assumption. (Boldface in original.) Those practices suggest that there is a general understanding that a trial begins on the date that the trial court sets it for trial unless the trial is subsequently postponed. In the absence of an express indication to the contrary, we would expect the legislature to use the phrase in accordance with the general understanding of its meaning.

In concluding that the trial did not begin until the jury was sworn, the trial court relied by analogy on the rule that, for the purposes of statutory and constitutional double jeopardy protections, jeopardy attaches when the jury is sworn. ORS 131.505(5)(b); Or Const, Art I, § 12; US Const, Amend V. The difficulty with that analogy is that there is no necessary relationship between the point in the proceedings at which jeopardy attaches and the time that the trial begins for other purposes. The United States Supreme Court has explained that the reason for holding that jeopardy attaches when the jury is sworn is to protect the accused's interest in retaining a chosen jury. *Crist v. Bretz*, 437 US 28, 35, 98 S Ct 2156, 57 L Ed 2d 24 (1978). That interest is unrelated to the question of when the trial itself begins.

Also, the apparent purpose underlying the 15-day rule in OEC 803(18a)(b) is a germane consideration in discerning what the legislature intended. Its obvious purposes are to enable a party to know about the other party's proposed hearsay evidence long enough before trial to be able to prepare to respond to it. That response could include developing other evidence or, if the declarants will testify, preparing to cross-examine them. It could also include preliminary motions to limit the use of the evidence and modifications to the party's intended *voir dire* of prospective jurors. Those are all things that a party could do most effectively for purposes

of judicial administration in the 15 days before the trial is scheduled to begin, as distinguished from the 15 days before the jury is sworn. The legislature's apparent purpose underlying OEC 803(18a)(b) is not consistent with the trial court's determination of when the trial begins under the rule. If the proponent of the evidence could wait until 15 days before the uncertain date on which the jury will be sworn to give the notice, the opposing party may have considerably fewer than 15 days before trial proceedings actually begin to prepare to respond. We conclude for all of the above reasons that trial in this case commenced under OEC 803(18a)(b) on the scheduled trial date, or 12 days after the notice was given.[4]

■ The state also argues that requiring notice 15 days before the scheduled trial date would cause unnecessary confusion when, as in this case, the original trial date was postponed. The rule requires notice 15 days "before trial"—that is, before the date on which the trial actually begins. The fact that there may have been a reset from an earlier trial date is irrelevant to that requirement.

■ We turn next to the state's suggestion that the court could have found good cause for the failure to give timely notice. That assertion has two fatal problems: First, the prosecutor conceded at trial that his negligence in not realizing that he had failed to give the notice was not good cause. Second, the trial court never ruled that there was good cause; we cannot affirm its decision on an alternative basis when it never made the predicate finding that OEC 803(18a)(b) commits to its consideration in the first instance.

■ Finally, the state also argues that defendant suffered no prejudice as a result of the court's ruling. There are two possible meanings to that argument. First, the state may mean that defendant did not suffer any prejudice from the fact that it gave the notice three days late. That argument ignores the literal words of the rule, which provide that "[n]o

[4] The state and the trial court apparently believed that November 30 was 13 days before the scheduled trial date, so that the notice was two days late if that was the start of the trial. Under ORS 174.120, the time within which an act is to be done is computed by excluding the first day and including the last, unless the last day is a Saturday, Sunday, or legal holiday. Thus, the state actually gave the notice 12 days before the scheduled trial date, and it was three days late on that basis.

statement may be admitted" unless the 15 days notice is given. The statute does not authorize any other sanction for the violation of the rule than that the evidence is not admissible if the notice requirement is not satisfied. *See Lajoie*, 316 Or at 71-72 (adopting similar interpretation of the 15-day requirement in OEC 412(4)(a) and reasoning that exclusion was mandated by the statute).[5]

■ Secondly, the state may mean that the admission of the statements was harmless error. However, we cannot say that there is little likelihood that the admission of the evidence affected the verdict. *State v. Hanson*, 304 Or 169, 180, 743 P2d 157 (1987). The evidence came in through several witnesses and included some of the first statements that the complainants made about the alleged abuse, thus significantly reinforcing their testimony at trial. The trial court granted judgments of acquittal on three counts, and the jury acquitted defendant on two other counts. The properly admitted evidence was not so overwhelming that we can say with confidence that the jury would have reached the same conclusions on the other counts in the absence of the challenged evidence. We therefore conclude that the admission of the statements was error that requires reversal of the convictions.

■ In an effort to aid the trial court and the parties in the future in the event that defendant is retried on the above counts, we comment on the following assignments of error. In his second assignment of error, defendant assigns error to the trial court's refusal to permit him to cross-examine one of the complaining witnesses about a physical examination concerning her previous claim of sexual abuse against a different person. The interview occurred after defendant allegedly abused her but before she had accused him of the abuse that led to the charge in this case. Defendant wanted to bring out that she had had an opportunity at that time to assert that defendant had abused her but had failed to do so. The trial

---

[5] OEC 412(2) provides that "evidence of a victim's past sexual behavior other than reputation or opinion evidence is * * * not admissible, unless the evidence * * * [i]s admitted in accordance with subsection (4) of this section." OEC 412(4)(a) provides, in part, that the accused shall make a written motion to offer such evidence "not later than 15 days before the date on which the trial * * * is scheduled to begin[.]"

court originally ruled that defendant could ask the complainant "At some point were you in a doctor's office?" "At some point were you asked if you had been sexually abused?" "This time occurred after you say Dr. Iverson touched you, and you never told the doctor anything about Dr. Iverson." It subsequently limited the questioning further, so that defendant could ask only whether the complainant had been examined by a doctor, not whether the doctor had specifically asked her if she had been sexually abused.

Defendant originally sought to have additional details of the complainant's previous abuse admitted into evidence, and the parties and the trial court therefore treated the issue as arising under OEC 412, which limits evidence of a complainant's previous sexual behavior. After the court limited the questioning, however, the complainant's previous sexual behavior was no longer in issue; all that remained in issue was whether defendant could offer evidence regarding the examiner's question to her to demonstrate that she had had an opportunity to disclose defendant's alleged abuse of her and had failed to accuse defendant at that time. Thus, OEC 412 no longer applied. As so limited, the proffered evidence would have been relevant to defendant's argument that the complainant accused defendant simply to draw attention to herself; her failure to mention the abuse when she was asked could suggest that her later accusation was a recent fabrication.[6] The trial court should have allowed defendant to question the complainant in the way that it originally indicated; its subsequent further restriction denying defendant the ability to offer relevant evidence was error. If that issue arises on remand, the trial court should modify its prior ruling.[7]

■    The third assignment of error involves the exclusion from evidence by the trial court of threatening notes that the same complainant allegedly found in her school locker after she accused defendant of abusing her. Because that issue

---

[6] Evidence is relevant under OEC 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[7] Because we reverse for other reasons, we do not need to consider whether the error would constitute an independent basis for reversal.

may also arise on remand, we discuss it for the benefit of the court and the parties. Defendant argues that the complainant wrote the notes in a further attempt to get attention; the police officer who investigated the incident concluded that the complainant had written them herself and that the complainant's friend, another alleged complainant, was unconcerned about the threats that they contained. However, there was no evidence produced at trial that the complainant wrote the notes. Without proof that she wrote the notes, the evidence is irrelevant. *See* OEC 104(2) (stating court's role in making decisions concerning conditional relevancy). On the record before us, the trial court did not err, and on remand the trial court should not admit the evidence regarding the notes unless there is admissible evidence that the complainant wrote them.

The fourth and sixth assignments of error relate to a discrepancy between the dates alleged in the indictment concerning the abuse of one complainant and her testimony as to when the alleged abuse occurred. The trial court did not err in its rulings. The fifth assignment of error involves the prosecutor's statements during closing argument and is unlikely to arise on remand.

Reversed and remanded for new trial.