22CA2205 Peo in Interest of NCB 02-19-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA2205
Adams County District Court No. 21JD298
Honorable Katherine R. Delgado, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of N.C.B.,

Juvenile-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1    N.C.B., a juvenile, appeals his adjudication of delinquency for sexual assault on a child as part of a pattern of sexual abuse. He argues that the district court abused its discretion by denying his request for a jury trial and that the magistrate erred by excluding evidence of (1) the victim's prior allegation of sexual abuse and (2) the failure of the victim and others to disclose the charged sexual assault during a prior investigation. He also contends that the cumulative effect of these errors requires reversal. We affirm.

## I.    Background

¶ 2    N.C.B. was adopted by the victim's grandparents in 2007, when he was eight or nine years old. From 2007 to 2015, he lived in his adoptive parents' home with the victim and several other fostered or adopted children. In 2015, N.C.B.'s adoptive parents terminated their relationship with N.C.B., and he left the home.

¶ 3    In 2017, the victim — then ten years old — told her grandmother that N.C.B. had sexually assaulted her in 2010 and 2011, when she was four or five years old and N.C.B. was twelve or thirteen. The victim's grandmother reported the allegations to police, who arranged a forensic interview with the victim.

¶ 4     In the forensic interview, the victim disclosed that, on multiple occasions, N.C.B. had licked her vagina and made her suck his penis. She said that when N.C.B. had licked her vagina, it made her feel "weird," "exposed," and "scared." She also said that when she would suck on N.C.B.'s penis, "white stuff" that was "salty tasting" would go in her mouth and cause her to "choke" and "spit."

¶ 5     The People charged N.C.B. with one count of sexual assault on a child and one count of sexual assault on a child as part of a pattern of sexual abuse. The charges were tried to a magistrate.

¶ 6     At trial, the victim, then fifteen years old, testified that N.C.B. had licked her vagina and made her suck his penis on more than five occasions. She described two of these incidents — the first time "in the garage on a blue couch" and the last time after the victim's grandmother sent her and N.C.B. to the garage to get frozen vegetables from the freezer. The victim testified that "white stuff" came out of N.C.B.'s penis that tasted like salt and made her gag. N.C.B. also testified and denied any sexual contact with the victim.

¶ 7     The magistrate found N.C.B. guilty on both counts, finding that the prosecution had proved three instances of sexual assault on a child — one on the blue couch, one when the victim and

N.C.B. went to get frozen vegetables, and one between those two incidents. In explaining her decision, the magistrate found the victim credible, noting that she had been "very consistent on the important details" and had been "able to describe the sexual assault in detail." Among the details the magistrate recounted were that the victim had "described the white stuff coming out of [N.C.B.'s] penis at age ten, and again [at trial], as being salty and disgusting and feeling like she was gagging and wanting to throw up."

¶ 8    N.C.B. filed a petition for district court review, and the district court affirmed the adjudication.

## II.    Denial of Request for a Jury Trial

¶ 9    N.C.B. argues that the district court abused its discretion by denying his request for a jury trial. He contends that (1) the district court did not consider the proper factors when evaluating his request, and (2) a jury trial was necessary because the magistrate had prejudged the victim's credibility. We disagree on both points.

### A.    Additional Background

¶ 10    N.C.B. requested a discretionary jury trial under section 19-2-107(1), C.R.S. 2018 (current version at section 19-2.5-610(1), C.R.S. 2025). Though recognizing that a jury trial was not

mandated by statute, he argued that "[t]he severity of the charges, the consequences of an adjudication of the felony charge[s] and the facts of this case militate in favor of the court granting a jury trial." He also noted that the trial would involve credibility determinations.

¶ 11    The district court denied the request. After concluding that N.C.B. was not legally entitled to a jury trial, the court found "no compelling reasons to use its discretion" to grant one. Likening the charges to those in *People in Interest of A.B.-B.*, 215 P.3d 1205, 1207 (Colo. App. 2009), the court found that there were "no exceptional or unique issues" and "no extraordinary potential consequences that warrant[ed]" a jury trial. It continued:

> When the court balances the benefits of an informal, speedy, simple, flexible and rehabilitative proceeding against the severity of the offense, nature of the consequences and particular facts of the case, the court finds for the former over the latter. *See A.C.*[] *v. People*, [16 P.3d 240, 243 (Colo. 2001)].
>
> The alleged victim is a girl of tender years. A formal drawn out jury trial would potentially and unnecessarily expose the child concerned to revealing an unpleasant and embarrassing experience in front of an entire group of strangers. It would potentially and unnecessarily traumatize the victim and her family. Further, a jury trial would drag out the

> case for up to six months. A bench trial would be resolved in two months.
>
> The court finds that it is in the best interest of the juvenile and the community that the court not grant a jury trial in this case. A trial to the court is more consistent with the goals of the juvenile system and its preference for a more intimate, protective, speedy, flexible and rehabilitative proceeding.

¶ 12    A year and a half later, with the case not yet having gone to trial,[1] N.C.B. renewed his request. In the meantime, the magistrate had denied N.C.B.'s motion to introduce evidence under the rape shield statute (as discussed further in Part III below), partly because the case would be tried to the court. N.C.B. argued that this ruling, along with a CRE 404(b) ruling that he asserted would compound the importance of credibility assessments, presented changed circumstances that made a jury trial "imperative."

¶ 13    The district court again denied the request, concluding that "the new developments cited in counsel's renewed motion" did not "change[] the court's analysis from its earlier order denying a jury trial." Citing "the reasons stated in [its] earlier order," the court

---

[1] Due to several delays not at issue in this appeal, the bench trial was not held as promptly as the district court had anticipated.

reiterated that the juvenile in *A.B.-B.* had been "charged with the exact same offenses" and subject to the "exact same consequences" as in this case, and the denial of a jury trial had been affirmed.

### B. Applicable Law and Standard of Review

¶ 14 There is no constitutional right to a jury trial in a juvenile delinquency proceeding. *A.C.*, 16 P.3d at 243. A juvenile has a statutory right to a jury trial in only two circumstances — when charged as an aggravated juvenile offender or with a crime of violence — neither of which applies in this case. *See* § 19-2.5-610(1); *A.C.*, 16 P.3d at 243. For other felonies, the court "has discretion to grant a jury trial," and its refusal to do so "does not constitute error." *A.C.*, 16 P.3d at 243. This discretion allows the court to "balance the benefits of informal, speedy and rehabilitative proceedings against the severity of the offense, the nature of the consequences and the particular facts of the case." *Id.* at 244.

¶ 15 We review a ruling on a juvenile's request for a jury trial in a delinquency proceeding for an abuse of discretion. *A.B.-B.*, 215 P.3d at 1209. We will uphold the district court's decision unless it was "manifestly arbitrary, unreasonable, or unfair." *Id.* (citation omitted). The question is not "whether we would have reached a

6

different result but, rather, whether the [district] court's decision fell within a range of reasonable options." *People in Interest of T.B.*, 2016 COA 151M, ¶ 60 (citation omitted), *aff'd*, 2019 CO 53.

## C. Exercise of Discretion

¶ 16 We first reject N.C.B.'s argument that the district court erred by failing to consider the "factors" set forth in *A.C.*, 16 P.3d at 244.

¶ 17 As an initial matter, while *A.C.* specified some considerations that may bear on the district court's decision whether to grant a jury trial, neither *A.C.* nor section 19-2.5-610(1) indicates that the court must expressly address each of those considerations. *See A.C.*, 16 P.3d at 244; § 19-2.5-610(1) (providing only that a court *may* order a jury trial when one is not required); *see also T.B.*, ¶ 61 (affirming denial of a motion for jury trial without factual findings).

¶ 18 But regardless, the district court *did* address the considerations identified in *A.C.* The court explicitly referenced *A.C.*'s standard, explaining that it had "balance[d] the benefits of an informal, speedy, simple, flexible and rehabilitative proceeding against the severity of the offense, nature of the consequences and particular facts of the case." *See A.C.*, 16 P.3d at 244. It fleshed out that conclusion by highlighting (1) the age of the victim; (2) the

7

potential consequences of a jury trial on the victim and her family; (3) the delay caused by a jury trial; (4) the lack of any "extraordinary potential consequences"; and (5) the similarity of the charges to another case in which the denial of a jury trial had been affirmed on appeal. Based on these considerations, it found that a bench trial was "more consistent with the goals of the juvenile system." That analysis was wholly consistent with *A.C.*

¶ 19 N.C.B. criticizes the district court for not addressing the "particular facts of the case" and relying too heavily on *A.B.-B.* in denying his *renewed* motion for a jury trial. *A.C.*, 16 P.3d at 244. But that order expressly incorporated the reasons in the court's prior ruling, which did address the facts of the case, most notably the age of the victim and the "unpleasant and embarrassing experience" she would be required to disclose. And the court cited *A.B.-B.* because the relevant facts — including the charges, the ages of the juvenile and the victim at the time of the offense, the nature and significance of the victim's testimony, and the potential consequences — were remarkably similar. *See A.B.-B.*, 215 P.3d at 1207, 1209. There is nothing improper about a district court drawing parallels to an analogous case.

## D. Prejudgment of Victim's Credibility

¶ 20 N.C.B. also argues that a jury trial was required because the magistrate had prejudged the victim's credibility. Specifically, in denying N.C.B.'s pretrial motion to introduce evidence of an alleged false accusation of sexual assault made by the victim against her grandfather, the magistrate "found [the victim] to be credible" that she had never made such an accusation. We are not persuaded that this finding supported, much less compelled, a jury trial.

¶ 21 The magistrate's express finding of credibility was limited to the victim's testimony about a specific incident that was unrelated to N.C.B. or the charged sexual assault. In short, the victim's mother had previously claimed that the victim's grandfather had showered with the victim and potentially sexually abused her. But the victim denied making such an allegation. It was that denial that the magistrate found credible. In other words, the magistrate believed the victim's assertion that she had *not* been sexually abused by her grandfather. The magistrate gave no indication that the victim's credibility on that point meant that she was credible with respect to her allegations of sexual assault by N.C.B.

¶ 22    N.C.B. asserts that the magistrate's credibility determinations in its pretrial ruling went beyond the express credibility finding. And it is true that the magistrate also credited the victim's pretrial testimony that (1) she had been sexually abused by another child in the home; and (2) she had falsely accused her mother's boyfriend of sexual abuse. But these findings too were confined to specific testimony about specific incidents unrelated to the charged sexual assault. The magistrate did not remark on the victim's overall credibility or on the veracity of her allegations in this case.

¶ 23    That is how this case differs from the cases on which N.C.B. relies. In *Estep v. Hardeman*, 705 P.2d 523, 526-27 (Colo. 1985), the court questioned the credibility of potential witnesses who had not yet testified as to the merits of the proceeding before it. In *In re Estate of Elliott*, 993 P.2d 474, 482 (Colo. 2000), the court became "personally embroiled in the controversy" and "prejudged [the party's] guilt." *See also Tepley v. Pub. Emps. Ret. Ass'n*, 955 P.2d 573, 579 (Colo. App. 1997) (holding that administrative board had prejudged evidence by making initial decision it was charged with reviewing). Nothing similar happened here, where the magistrate simply credited the victim's testimony concerning a pretrial issue

10

separate from N.C.B.'s guilt. Such a finding does not call into question the magistrate's impartiality. *See Estep*, 705 P.2d at 527.

¶ 24     In any event, the remedy when a judicial officer has prejudged the evidence or otherwise raised an appearance of partiality is not a jury trial; it is disqualification of the judicial officer and substitution of a new one. *See id.* at 526-27; *Estate of Elliott*, 993 P.2d at 481-82. But before trial began, the magistrate advised N.C.B. that he had the right to have his trial heard by a district court judge — i.e., a different judicial officer. And N.C.B., while reiterating his request for a jury trial, confirmed his choice to otherwise have the trial proceed before the magistrate who had decided the pretrial motion. *Cf. People v. Garcia*, 2024 CO 41M, ¶ 52 (holding that defendant's agreement for judge to continue presiding over case supported inference that he was not in fact concerned about judge's partiality).

¶ 25     Thus, we conclude that the magistrate's pretrial finding that the victim was credible with respect to the allegation against her grandfather had no bearing on N.C.B.'s request for a jury trial. Because the denial of that request "fell within a range of reasonable options," *T.B.*, ¶ 61, the district court did not abuse its discretion.

11

### III. Exclusion of Prior Sexual Abuse Allegation

¶ 26    N.C.B. next contends that the magistrate erred by excluding evidence that the victim had previously accused another member of the household of sexually abusing her.  He asserts that (1) if the allegation was false, contrary to the magistrate's finding, it was relevant to show the victim's history of false reporting of sexual assaults; and (2) if the allegation was true, it was relevant to show an alternative source of the victim's precocious sexual knowledge.

¶ 27    N.C.B. also argues that the allegation was admissible to show that law enforcement had previously interviewed the victim about sexual abuse and she did not disclose any abuse by N.C.B.  But N.C.B. did not include this theory of relevance in his offer of proof.  *See* § 18-3-407(2)(a), C.R.S. 2021[2] (requiring the moving party to make "an offer of proof of the relevancy and materiality of [the] evidence").  And in his reply brief, N.C.B. clarifies that he relies on

---

[2] We cite, throughout this opinion, the version of the statute in effect at the time of trial because the statute has since been amended in a way that would affect N.C.B.'s first theory of admissibility.  *Compare People v. Weiss*, 133 P.3d 1180, 1187 (Colo. 2006) (holding that history of false reporting requires multiple false reports), *with* § 18-3-407(2), C.R.S. 2025 (requiring "at least one incident of false reporting").

this theory only as to the fact of the investigation, not as to evidence of the assault itself.  We address this argument in Part IV below.

### A.    Additional Background

¶ 28    N.C.B. filed a pretrial motion to introduce evidence under the rape shield statute, section 18-3-407.  The motion identified five prior sexual abuse allegations made by the victim, two of which are relevant to this appeal.  The first was an allegation — which was later recanted by the victim and determined to be unfounded — that her mother's boyfriend had sexually abused her.  The second was an allegation that another child in the home, C.B., had "licked her on her vagina" — an allegation that was investigated and resulted in "inconclusive" findings.  N.C.B. argued in his motion that these allegations were false and demonstrated the victim's history of false reporting under section 18-3-407(2).  Alternatively, he argued that, if the incidents happened, they were admissible to show the source of the victim's precocious sexual knowledge.

¶ 29    The magistrate held an in camera evidentiary hearing, where the victim testified about both allegations.  As to the first, she testified that although she told people her mother's boyfriend had touched her inappropriately, he never did.  As to the second, she

13

maintained that C.B. had touched her inappropriately. She testified that C.B. "had done the same thing that [N.C.B.] did." When asked to be more specific, she said he would take her underwear off and touch her vagina with his hand and his mouth.

¶ 30 After the hearing, the magistrate denied N.C.B.'s motion in its entirety, excluding evidence of the prior allegations. The magistrate found that N.C.B. had failed to prove that the victim's allegation against C.B. was false, noting that the victim was "clear that the sexual assault did happen." Thus, even if the victim's prior allegation against her mother's boyfriend was false, N.C.B. had failed to show that the victim had a "history of false reporting."

¶ 31 The magistrate also found that the alleged sexual abuse by C.B. was not admissible to show the source of the victim's precocious sexual knowledge. The magistrate reasoned that (1) the victim's description of the abuse was too general and inconsistent to establish any similarity to the charged assault; (2) the potential inference that N.C.B. was the only source of the victim's sexual knowledge was less significant because trial was to the court; and (3) the prosecution did not plan to make that argument at trial.

## B.     Applicable Law and Standard of Review

¶ 32     With two exceptions not relevant here, the rape shield statute deems evidence of specific instances of the victim's prior or subsequent sexual conduct presumptively irrelevant.  § 18-3-407(1); *see also Pierson v. People*, 2012 CO 47, ¶ 11.  Such evidence is admissible at trial only if the court finds that the evidence is "relevant to a material issue [in] the case."  § 18-3-407(2)(e).  The same limitation applies to "evidence that the victim . . . has a history of false reporting of sexual assaults."  § 18-3-407(2).

¶ 33     Evidence proffered under the rape shield statute is subject to the same relevance and prejudice limitations that apply to other evidence.  *People v. Sims*, 2019 COA 66, ¶ 45.  Evidence is relevant if it has "any tendency to make the existence of a fact of consequence more or less probable."  *People v. Hood*, 2024 COA 27, ¶ 19; *see* CRE 401.  Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, among other concerns.  CRE 403; *see Hood*, ¶ 19.

¶ 34     We review evidentiary rulings, including the exclusion of evidence under the rape shield statute, for an abuse of discretion.  *Hood*, ¶ 6.  A court abuses its discretion when its ruling is

manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Id.* To the extent the magistrate's evidentiary ruling turned on factual findings, we review those factual findings for clear error. *See People v. Baker,* 178 P.3d 1225, 1231 (Colo. App. 2007); *People in Interest of B.D.,* 2019 COA 57, ¶ 12 ("[W]e must accept the magistrate's factual findings unless clearly erroneous."), *rev'd on other grounds,* 2020 CO 87. A factual finding is clearly erroneous if it has no record support. *People v. Romero,* 2024 CO 62, ¶ 47.

### C. History of False Reporting

¶ 35    We first reject N.C.B.'s contention that the magistrate erred by finding that the victim's allegation against C.B. was not false and, thus, was not admissible to show a history of false reporting.

¶ 36    One type of evidence that may be admitted under the rape shield statute is evidence that the victim has "a history of false reporting of sexual assaults." § 18-3-407(2); *see People v. Ramcharan,* 2024 COA 110, ¶ 30. To admit such evidence under the version of the statute in effect at the time of trial, a party must show multiple reports of sexual assaults to have been false by a preponderance of the evidence. *People v. Weiss,* 133 P.3d 1180,

1189 (Colo. 2006). A single false report is not a "history of false reporting." *People v. Marx*, 2019 COA 138, ¶ 50 (citation omitted).

¶ 37 The magistrate found the victim had made one false report of a sexual assault — the incident involving the mother's boyfriend. But it did not find multiple false reports. More to the point, it found that N.C.B. had not proved the allegation against C.B. was false.

¶ 38 N.C.B. takes issue with that finding, pointing to inconsistencies in the victim's allegations, conflicts between her initial report and her father's testimony, her denial in her forensic interview that anyone else had "done something like" what N.C.B. had done, and the closure of the investigation as "inconclusive."

¶ 39 But the magistrate expressly addressed several of these points. In particular, the magistrate found that (1) despite her lack of recollection as to the details of the assault or who she told, "she was clear that the sexual assault did happen"; (2) it was not unusual that the victim, who was five at the time, had difficulty describing what happened; (3) a detective testified that a finding of "inconclusive" does not mean a sexual assault did not happen; and (4) the victim's statement that no one else had done "something like this" to her body was vague and did not necessarily mean she had

17

never been sexually assaulted.  Because the record supports the magistrate's finding, we may not second-guess it.  *See Romero*, ¶ 1; *see also People v. Pitts*, 13 P.3d 1218, 1221 (Colo. 2000) ("It is the function of the trial court, and not the reviewing court, to weigh evidence and determine the credibility of the witnesses.").

¶ 40  Thus, because the magistrate did not clearly err in finding that N.C.B. failed to prove the sexual assault allegation involving C.B. was false, that allegation was not admissible as evidence of the victim's history of false reporting.  *See Weiss*, 133 P.3d at 1189.

### D.  Precocious Sexual Knowledge

¶ 41  Though a closer call, we also conclude that the magistrate did not abuse her discretion by finding that evidence of C.B.'s sexual abuse of the victim was not relevant to suggest a potential alternative source for the victim's precocious sexual knowledge.

¶ 42  Because a child's precocious "knowledge of sexual acts and sexual anatomy . . . might be suggestive of abuse," evidence that the victim has been sexually abused by someone else may be relevant to show "a potential source for that knowledge."  *Pierson*, ¶ 17.  Such evidence can "rebut[] 'the inference that a child victim could not describe the sexual acts unless the defendant had

committed the alleged acts.'" *People v. Osorio-Bahena*, 2013 COA 55, ¶ 27 (citation omitted). But the admissibility of such evidence depends on several factors, including the nature and circumstances of the acts involved, the child's age, other sources of the child's sexual knowledge, how the victim reported and described the charged sexual assault, the degree of similarity between the alleged assault and the other abuse, and the availability of less prejudicial means to show the victim's prior sexual knowledge. *Id.* at ¶ 31.

¶ 43　　We have little trouble concluding that the victim's description of the charged sexual assaults in her forensic interview displayed a degree of sexual knowledge beyond that of a typical child her age — at least as it related to her acts of oral sex upon N.C.B. At the age of ten, the victim described "white stuff" coming out of N.C.B.'s penis when it was in her mouth. She said the "white stuff" tasted salty and that she spit or "puked" it out afterward. And she said it gave her a "gagging" or "choking" sensation. We agree with N.C.B. that a ten-year-old child would not ordinarily be expected to be able

to describe oral sex at this level of detail.[3]  *See id.* at ¶ 36; *cf. Pierson*, ¶ 19 (holding that child's "basic awareness of male sexual anatomy and an awareness that applying pressure to her own external genitalia could be painful" was not "unexpected").

¶ 44  But the proffered evidence of the sexual assault by C.B. did not offer any alternative explanation for such knowledge.  *See Pierson*, ¶ 19.  Although the victim initially said that C.B. did the "same thing" to her that N.C.B. did, she clarified — consistent with N.C.B.'s offer of proof — that the assault was limited to C.B. touching *her* with his hand and mouth.  She confirmed that she never touched C.B.  Thus, the assault by C.B. could not have been the source of the victim's knowledge of oral sex upon a male.

¶ 45  We recognize that the victim also alleged that N.C.B. had licked her vagina.  But her description of that act in her forensic

---

[3] The victim made similar statements at trial, when she was fifteen. Based on this record, we decline to hold that such knowledge is necessarily beyond the purview of a typical fifteen-year-old.  *See People v. Conyac,* 2014 COA 8M, ¶ 119 (noting that thirteen-year-old "would have had access to her middle school peers, social media, television, and music that would have contributed to her knowledge of sexual matters"); *Pierson v. People,* 2012 CO 47, ¶ 18 (noting absence of any "expert opinion concerning the sexual sophistication of children of the victim's age and circumstances").

interview — that it made her feel "weird," "exposed," and "scared" — was less detailed and more age-appropriate than her description of what N.C.B. had made her do to him. Other than perhaps a general awareness of the act itself, that description did not reveal any specific sexual knowledge that would be unexpected of a ten-year-old. *See id.* at ¶¶ 5, 17, 19 (holding that an eight-year-old's description of the defendant touching and "press[ing]" on her vagina did not display unexpected sexual knowledge). There was therefore no need to rebut the inference that such knowledge came from the charged assault. *See Osorio-Bahena*, ¶ 27; *Pierson*, ¶ 21 (holding that district court properly excluded evidence of prior incident in which someone else had touched the victim's vagina). And even if the assault by C.B. could have been a source of some of the victim's sexual knowledge, it could not have been the source of all of it.

¶ 46     Thus, we conclude that the magistrate did not abuse her "considerable discretion" in determining that N.C.B. failed to overcome the rape shield statute's presumption of irrelevance with respect to the alleged sexual assault by C.B. *Pierson*, ¶ 21. We therefore need not address the other bases for the magistrate's

21

decision, including that trial was to the court and that the prosecution did not plan to argue precocious sexual knowledge.

### IV. Exclusion of Evidence of Prior Investigation

¶ 47 N.C.B. finally argues that the magistrate erred by precluding him from eliciting on cross-examination that the detective had previously investigated other incidents at the home and neither the victim nor others had disclosed the abuse by N.C.B. We disagree.

### A. Additional Background

¶ 48 After the magistrate denied N.C.B.'s rape shield motion, N.C.B. moved for clarification regarding the scope of permissible cross-examination of the lead detective and the victim. The motion explained that the detective had previously investigated multiple sexual abuse allegations at the home, including the alleged assault of the victim by C.B., and that no one had ever disclosed any sexual abuse of the victim by N.C.B. during these investigations.

¶ 49 N.C.B. conceded that, in light of the magistrate's prior ruling, the substance of the prior allegations and the specific reason for the detective's involvement at the home were irrelevant and inadmissible. But he sought to ask the detective four questions:

(1) whether she had previously investigated incidents at the house;

(2) whether another child in the home, who was listed as a witness, ever previously disclosed concerns regarding N.C.B.'s behavior toward the victim and another child;

(3) whether the victim ever previously disclosed concerns regarding N.C.B.; and

(4) whether anyone the detective interviewed between 2011 and 2014 at the home indicated any concerns regarding N.C.B.'s behavior toward the victim.

N.C.B. also explained that he intended to ask the victim and the other child about their statements for impeachment purposes.

¶ 50 Based on the rape shield ruling, the magistrate prohibited N.C.B. from asking the detective about prior investigations at the home. But the magistrate allowed N.C.B. to ask the victim whether she had previously disclosed the allegations and why she had not.

¶ 51 At trial, defense counsel asked the victim if she had ever told anyone about the assault by N.C.B. before her 2017 outcry, and she said she had not. Defense counsel also asked the victim's father and grandparents whether the victim had previously told them

23

about any abuse by N.C.B. and whether they had previously reported any concerns. Each said she had not and they had not.[4]

## B.    Analysis

¶ 52    The trial court has wide latitude to place reasonable limitations on cross-examination to avoid inquiry that is irrelevant, prejudicial, or only marginally relevant. *People v. Reynolds-Wynn,* 2024 COA 33, ¶ 25. We review such limitations, like other evidentiary rulings, for an abuse of discretion. *Id.* at ¶ 31.

¶ 53    In arguing that the magistrate abused her discretion, N.C.B. relies largely on *State v. Iverson,* 57 P.3d 953, 958 (Or. Ct. App. 2002). In *Iverson,* the defendant sought to elicit that (1) the victim had previously been examined by a doctor about a different claim of sexual abuse; (2) the doctor asked the victim if she had been sexually abused; and (3) the victim did not tell the doctor about the charged assault. *Id.* The court held that it was error to bar the defendant from asking "whether the doctor had specifically asked [the victim] if she had been sexually abused." *Id.* It reasoned that

---

[4] The other child N.C.B. referred to in his motion did not testify at trial, so any limits on his cross-examination are not at issue.

24

this question was relevant to show the victim "had an opportunity to disclose defendant's alleged abuse" but had failed to do so. *Id.*

¶ 54 The difference is that, in this case, N.C.B. disclaimed any intent to ask that question. Based on the rape shield ruling, N.C.B. agreed not to ask any questions about the nature of the prior investigations, the substance of the prior allegations, or the specific reason for the detective's involvement at the home. In other words, unlike in *Iverson,* there would be no evidence that the victim was ever asked if she had been sexually abused — nor would there be any relevant context for such a question. *See id.* Without that, the proposed questions offered nothing more than an indication that the victim had failed to raise an unrelated incident with a police officer who had been in her home at some point for something.

¶ 55 Theoretically, any interaction with a police officer might give a victim an opportunity to disclose prior abuse. But so would any number of other interactions the victim had between 2011 and 2017 — with teachers, family members, or other adults. Indeed, the magistrate allowed N.C.B. to ask the victim about her failure to tell specific people, including the detective, about the abuse. That the detective had been in the home for unspecified investigations

was, at most, only marginally relevant to that line of inquiry — and even less so to the failure of *others* in the home to volunteer their suspicions. *See Merritt v. People*, 842 P.2d 162, 166 (Colo. 1992).

¶ 56 Moreover, even if we were to conclude the magistrate erred, any error would be harmless for many of the same reasons. During cross-examination, the victim confirmed that the first time she told anyone about the assaults was in 2017, six or seven years after they occurred, and that she did not tell her aunt, mother, father, or sister. The victim's father, grandmother, and grandfather each also testified that the victim did not tell them about the abuse before 2017, even though the grandmother had specifically talked to her about "good touch and bad touch." This testimony established that the victim had opportunities to disclose the abuse earlier and did not do so. There is no reasonable probability that the availability of one additional such opportunity would have changed the outcome of trial. *See Krutsinger v. People*, 219 P.3d 1054, 1060, 1062 (Colo. 2009) (applying nonconstitutional harmless error standard to limit on cross-examination and concluding error was harmless where victim was cross-examined on "her failure to make outcry sooner").

26

¶ 57    Thus, we conclude that the magistrate did not abuse her discretion, much less reversibly err, by precluding N.C.B. from asking the detective about prior investigations at the home.

## V.    Cumulative Error

¶ 58    Because we have concluded there was no error, N.C.B.'s cumulative error argument also fails.  *See Howard-Walker v. People*, 2019 CO 69, ¶ 25 ("For reversal to occur based on cumulative error, a reviewing court must identify multiple errors . . . .").

## VI.    Disposition

¶ 59    The judgment is affirmed.

JUDGE GROVE and JUDGE YUN concur.